IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |  |
|---|---|---|
| EMPLOYERS-SHOPMENS LOCAL 516 PENSION TRUST; CORAL CONSTRUCTION COMPANY RESTATED EMPLOYEE PROFIT SHARING PLAN & TRUST; WESTERN STATES HEALTH AND WELFARE TRUST FUND OF THE OPEIU, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 05-444-KI |
| vs. | ) ) | OPINION |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; FIDELITY AND DEPOSIT COMPANY OF MARYLAND; HARTFORD FIRE INSURANCE COMPANY; SEABURY & SMITH, INC. d/b/a MARSH ADVANTAGE AMERICA; WILLIS OF OREGON, INC., | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Michael E. Farnell
Emily S. Robertson
Parsons Farnell & Grein, LLP
805 S. W. Broadway, Suite 1560
Portland, Oregon 97205

    Attorneys for Plaintiffs

G. Kevin Kiely
William J. Lehman
Cable Huston Benedict Haagensen & Lloyd
1001 S. W. Fifth Avenue, Suite 2000
Portland, Oregon 97204

Michael R. Davisson
Susan Koehler Sullivan
Sedgwick Detert Moran & Arnold, LLP
801 S. Figueroa Street, 18th Floor
Los Angeles, California 90017-5556

Thomas H. Nelson
825 N. E. Multnomah, Suite 925
Portland, Oregon 97232

John Spencer Stewart
Thomas A. Larkin
Stewart Sokol & Gray, LLC
2300 S. W. First Avenue, Suite 200
Portland, Oregon 97201-5047

Dwain M. Clifford
James T. McDermott
Ball Janik, LLP
101 S. W. Main Street, Suite 1100
Portland, Oregon 97204

Bruce A. Rubin
Justin C. Sawyer
Miller Nash, LLP
3400 US Bancorp Tower
111 S. W. Fifth Avenue
Portland, Oregon 97204-3699

James H. Gidley
Kevin M. Sali
John P. Nusbaum
Perkins Coie, LLP
1120 N. W. Couch Street, 10th Floor
Portland, Oregon  97209-4128

    Attorneys for Defendants

KING, Judge:

Plaintiffs, three ERISA[1] trusts (collectively, the "Trusts"), all suffered large losses when their investments through Capital Consultants, LLC ("CCL") collapsed.  When the Trusts were unable to collect on bonds purchased to protect against such dishonesty, the Trusts sued their brokers and insurers in state court.  Defendants removed the action to this court and the Trusts objected.  I will first address a procedural defect argument.  Then, prior to "wad[ing] into the veritable Sargasso Sea of obfuscation that is ERISA preemption law,"[2] Rutledge v. Seyfarth, Shaw, Fairweather, 201 F.3d 1212, 1223 (9th Cir.) (internal quotation omitted), cert. denied, 531 U.S. 992 (2000), I must determine if ERISA preemption must be addressed, as the Trusts contend, or should not be addressed, as defendants contend.  Before the court is Plaintiffs' Motion to Remand (#32) and Defendant Seabury & Smith, Inc.'s Motion to Sever (#55).  For the reasons below, I remand this action to state court.

## ALLEGED FACTS

The Trusts used brokers to purchase ERISA-compliant fidelity bonds from insurers. Employers-Shopmens Local 516 Pension Trust ("Local 516") used Seabury & Smith dba Marsh

---

[1] Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq.

[2] A tip of the hat to plaintiffs for pointing out that wonderful quotation.

Advantage America ("Marsh") to purchase the bond from Travelers Casualty and Surety Company of America ("Travelers"). Western States Health and Welfare Trust Fund of the OPEIU ("Western") used Marsh to purchase the bond from Hartford Fire Insurance Company ("Hartford"). Coral Construction Company Restated Employee Profit Sharing Plan & Trust ("Coral") used Willis of Oregon, Inc. ("Willis") to purchase the bond from Fidelity and Deposit Company of Maryland ("Fidelity"). Coral first purchased a bond from Fidelity in 1980 and renewed it through 2002. The 1980 Fidelity bond used a definition of "employee" that was coextensive with people required to be bonded under ERISA. When Coral renewed the bond in 1992, Fidelity changed the definition of "employee" to one which is less inclusive and which matches the definition in the bonds issued by Travelers and Hartford.

The Trusts all had money invested with CCL which was lost through the allegedly fraudulent and dishonest conduct of CCL. The insurers refused to pay claims plaintiffs made against their bonds because the insurers claim CCL does not fall within the definition of "employee." Plaintiffs bring this action alleging breach of contract and tort claims against the insurers and alternative breach of contract and tort claims against the brokers for not procuring ERISA-compliant bonds, if plaintiffs do not prevail against the insurers.

## DISCUSSION

I. <u>Motion to Sever</u>

Marsh moves to sever the claims brought by plaintiff Coral from the claims brought by the other two plaintiffs, Local 516 and Western. Hartford does not oppose severance. The Trusts oppose severance, as do Willis and Fidelity. Travelers did not take a position.

Marsh interprets the First Amended Complaint such that Coral only bases its claims on the 1980 Fidelity bond and not on its bond which was effective when CCL's conduct occurred. Based on this reading, Marsh argues that Coral's claims arise from different facts than the claims of Local 516 and Western because the "employee" definition in the 1980 Fidelity bond differs from the definition in the other trusts' bonds. Marsh argues that there would be jury confusion if Coral's claims are not severed. Marsh also contends that severance of Coral's claims is appropriate because Coral sued the only party, Willis, that destroys diversity. Marsh asks the court to preserve diversity jurisdiction by severing the nondiverse party, if necessary to do so because the court finds that there is no federal question jurisdiction.

The Trusts contend that Coral asserts claims based on the 1980 Fidelity bond in addition to claims based on its current bond. Although the Trusts raise other arguments, I need not address them here. I also read the First Amended Complaint in the same way as the Trusts do. And I agree that I cannot sever claims over which this court does not have jurisdiction. Thus, I turn to the question of remand.

II.  Motion to Remand

Plaintiffs move to remand this action for either of two reasons: (1) a procedural argument that the Notice of Removal was defective; and (2) a substantive argument that the court lacks subject matter jurisdiction.

A civil action brought in state court may be removed by the defendant to the federal district court if the district court has original jurisdiction over the action, that is, if the action could have been brought first in the district court. 28 U.S.C. § 1441(a). The party seeking removal has the burden of establishing federal jurisdiction. Westinghouse Elec. Corp. v.

PAGE 5 - OPINION

Newman & Holtzinger, P.C., 992 F.2d 932, 934 (9th Cir. 1993). Courts strictly construe the removal statute against removal jurisdiction. Any doubt as to the right of removal is resolved in favor of remand. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

    A.    Notice

The Trusts filed this action in Multnomah County Circuit Court on February 18, 2005 against all defendants except Willis. On February 24, 2005, the day after the tolling agreement between Coral and Willis expired, the Trusts amended the complaint to add Willis as a defendant in the claim alleged by Coral. Willis is the only nondiverse defendant. Defendants were served the First Amended Complaint on February 28, 2005.

Defendants removed the action on March 29, 2005. The Notice of Removal contained a copy of the First Amended Complaint but did not include the pleading's exhibits. On April 8, 2005, after the 30-day removal period expired, defendants filed an Amendment to Notice of Removal which included the exhibits. On April 28, 2005, the Trusts moved to remand the action.

The Trusts contend that the action must be remanded because the Notice of Removal was procedurally defective due to the lack of exhibits. The Trusts note that they objected within the 30-day remand period so they did not waive the defect. Essentially, the Trusts argue that the Notice of Removal filed within the 30-day removal period was invalid because of the defect. According to the Trusts, a valid Notice was not filed until the exhibits were provided in the Amendment, but that filing was untimely because the 30-day removal period had passed. Although the Trusts do not argue any prejudice, they note that none is required for remand and that the removal statute is strictly construed, even for matters that may seem inconsequential.

The Trusts also note that the removal statute was amended in 1988 to require the filing of remand motions within 30 days of the filing of the notice of removal if the remand motion is based on any defect other than lack of subject matter jurisdiction. The Trusts thus argue that pre-1988 cases are inapplicable when analyzing the current version of the statute.

Defendants argue that they cured any procedural defect caused by the lack of exhibits. Defendants also argue that in the Ninth Circuit, a procedural defect of this type is not a basis to remand an action. Defendants contend that the 1988 amendment is a limitation on opposing removal and should not be used to prohibit defendants from curing a procedural defect.

The statutes now state:

> (a) A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.
>
> (b) The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446.

> (c) A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. § 1447.

Prior to amendment in 1988, Section 1447(c) stated:

> If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of just costs.

The 1988 amendment divides removal defects into procedural defects and jurisdictional defects. Jurisdictional defects are never waived and may be raised at any time before final judgment. Congress has required plaintiffs to object to procedural defects within 30 days or the objection is waived. I agree with plaintiffs' contention that the amendment destroys the persuasiveness of cases based on the pre-1988 statute which ignore merely formal defects because they are not jurisdictional. The current statute applies to "any defect" and does not further divide defects into the formal or modal variety versus the substantial or prejudicial variety. As mentioned above, the removal statute must be strictly construed in order to keep from expanding this court's limited jurisdiction.

I acknowledge defendants' argument based on the legislative history accompanying the 1988 amendment that its purpose was to prevent a remand due to a procedural defect that was not raised until long after the case was underway in federal court. Because the language of the statute is clear, however, I am to look no further to interpret it. Avendano-Ramirez v. Ashcroft, 365 F.3d 813, 816 (9th Cir. 2004) ("Canons of statutory construction dictate that if the language of a statute is clear, we look no further than that language in determining the statute's meaning.").

Defendants rely on a few post-1988 cases. The full extent of the analysis of the issue is contained in a footnote in Western Chance No. 2, Inc. v. KFC Corp., 957 F.2d 1538, 1540 n.3 (9th Cir. 1992) (citations omitted):

PAGE 8 - OPINION

Western Chance claims that the district court lacked subject matter jurisdiction because KFB did not attach a copy of Western Chance's motion for a preliminary injunction when it removed the case from the state Superior Court. Just how that failure could deprive the court of jurisdiction is not clear to us. To the extent that the failure to attach that document was an error, it was one that the district court could allow KFB to cure, as it did.

Western Chance does not address the issue before me. Defendants here failed to attach to the Notice of Removal the exhibits to the First Amended Complaint. An exhibit to a pleading is a part of the pleading for all purposes. Fed. R. Civ. P. 10(c). Defendants in Western Chance failed to attach the motion for a preliminary injunction. Motions, however, are not pleadings. Fed. R. Civ. P. 7(a) (a pleading is a complaint, answer, reply to a counterclaim, answer to a cross-claim, third-party complaint, and a third-party answer). The statute does not require motions to be attached to the notice of removal. Furthermore, the appellate court only mentioned subject matter jurisdiction rather than a procedural defect, the argument raised by the plaintiffs before me. For these reasons, I am not persuaded that Western Chance governs this situation.

Defendants also rely on Efford v. Milam, 368 F. Supp. 2d 380 (E.D. Pa. 2005), in which defendants did not file the praecipe for writ of summons and the certificate of service until shortly after the 30-day removal period ended. Efford, relying on pre-1988 cases, excuses the procedural defect as one that is "merely formal or modal." Id. at 383. As explained above, I do not believe that reasoning is persuasive given the amendment in the statute.

Therefore, I conclude that any defect in removal procedure must be cured within the 30-day removal period or it is fatal to the removal. Other district courts have decided cases on this basis. See Kisor v. Collins, 338 F. Supp. 2d 1279 (N. D. Ala. 2004) (case remanded when failure to include a copy of the summons and returns of service was not cured until after 30-day

removal period was over); Macri v. M&M Contractors, Inc., 897 F. Supp. 381 (N.D. Ind. 1995) (case remanded when defects of an unsigned removal petition, lack of prompt written notice to plaintiff, and failure to promptly file a copy of the notice with the state court were not cured until after 30-day removal period was over).

Defendants contend that I have the discretion to ignore the lateness but do not provide any authority other than what I discounted above. I would be inclined to remand the action on the basis of the procedural defect alone, but the substantive question also requires remand.

### B. Subject Matter Jurisdiction

Alternatively, the Trusts argue for remand because this court lacks subject matter jurisdiction, asserted by defendants in the Notice of Removal to be a federal question. The Trusts contend that they only allege traditional state law claims related to the fidelity bonds and that the claims will require interpretation of an insurance policy and the policy's regulatory approval, marketing, procurement, and issuance. Plaintiffs assumed that defendants would rely on complete ERISA preemption to support federal question jurisdiction.

Instead, defendants contend that federal question jurisdiction exists by relying on another of the exceptions to the well-pleaded complaint rule, namely, that the Trusts' right to relief depends on the resolution of a substantial federal question. Defendants claim that the court need not tackle an ERISA preemption analysis. They note the numerous references to ERISA in the First Amended Complaint and contend that the claims are substantially based on defendants' failure to comply with the requirements of ERISA by providing bonds which have the mandated coverage. Defendants contend that the court must determine if the bonds issued by them comply

with ERISA by determining what ERISA requires and how, if at all, any ERISA requirements affect the contracts entered into and alleged representations made by defendants.

In reply, the Trusts insist that the only appropriate analysis is whether the Trusts' claims are preempted by ERISA. The Trusts note that since the Supreme Court extended the complete preemption doctrine to ERISA in Metropolitan Life Insurance Co. v. Taylor, 481 U.S. 58 (1987), employee benefit cases invariably have been examined exclusively by application of that doctrine. The Trusts also point to cases in which courts that addressed a completely preempted field, such as ERISA or the Labor Management Relations Act ("LMRA"), also go on to perform a substantial federal question analysis on different claims which were arguably federal. The Trust contends that courts first consider whether Congress intended to completely preempt the field. If so, the court applies the complete preemption analysis. If not, and only if not, the court applies the substantial federal question analysis.

If the jurisdiction is based on a federal question, the court must apply the "well-pleaded complaint rule" which provides that removal is appropriate only if a federal question appears in the complaint's statement of the claims, and not in anything alleged in anticipation of avoidance of defenses. Lippitt v. Raymond James Financial Services, Inc., 340 F.3d 1033, 1040 (9th Cir. 2003).

Under a corollary to this rule, the artful pleading doctrine, a plaintiff may not avoid federal jurisdiction by omitting allegations of federal law that are essential to the establishment of his claim. Id. at 1041. The artful pleading doctrine, which should be invoked in limited circumstances due to issues of federal and state relationships, "allows courts to delve beyond the face of the state court complaint and find federal question jurisdiction by recharacteriz[ing] a

plaintiff's state-law claim as a federal claim." Id. (internal quotation omitted). The doctrine is used in complete preemption cases, such as under ERISA and the LMRA, and in substantial federal question cases. The latter category includes cases where the claim is "necessarily federal in character or where the right to relief depends on the resolution of a substantial, disputed federal question." Id. at 1041-42 (internal citation omitted).

The Supreme Court recently noted the constant refrain in substantial federal question cases that federal jurisdiction "demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, __ U.S. __, 125 S. Ct. 2363, *4 (2005) (federal question jurisdiction existed in quiet title action based on federal tax law). The Court continued:

> But even when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto. For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331. . . . Because arising-under jurisdiction to hear a state-law claim always raises the possibility of upsetting the state-federal line drawn (or at least assumed) by Congress, the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction.

Id. at *4-*5.

This last quotation is particularly instructive here where Congress has spoken forcefully on the division of labor between state and federal courts by completely preempting ERISA cases. Thus, I agree with the Trusts that the appropriate analysis is an ERISA preemption analysis.

The Ninth Circuit has provided a comprehensive explanation of ERISA preemption:

In order to be removable to federal court, a claim concerning a plan governed by ERISA must be preempted by ERISA and must fall within the scope of ERISA's enforcement provisions. Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 62-66, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987); see also Toumajian v. Frailey, 135 F.3d 648, 654 (9th Cir.1998).

ERISA's preemption provision, 29 U.S.C. § 1144(a), provides that ERISA's provisions shall generally "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." While this section suggests that the phrase "relate to" should be read broadly, the Supreme Court has recently admonished that the term is to be read practically, with an eye toward the action's actual relationship to the subject plan. See New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655-56, 115 S. Ct. 1671, 131 L. Ed. 2d 695 (1995) (stating that "infinite relations cannot be the measure of preemption" in construing "relate to").

Generally speaking, a common law claim "relates to" an employee benefit plan governed by ERISA "if it has a connection with or reference to such a plan." Id. (internal quotation marks omitted); see also Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Group, Inc., 187 F.3d 1045, 1052 (9th Cir. 1999).

In evaluating whether a common law claim has "reference to" a plan governed by ERISA, the focus is whether the claim is premised on the existence of an ERISA plan, and whether the existence of the plan is essential to the claim's survival. If so, a sufficient "reference" exists to support preemption. California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 324-25, 117 S. Ct. 832, 136 L. Ed. 2d 791 (1997) (citing Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 140, 111 S. Ct. 478, 112 L. Ed. 2d 474 (1990)).

In determining whether a claim has a "connection with" an employee benefit plan, courts in this circuit use a relationship test. Specifically, the emphasis is on the genuine impact that the action has on a relationship governed by ERISA, such as the relationship between the plan and a participant. See Abraham v. Norcal Waste Sys., Inc., 265 F.3d 811, 820-21 (9th Cir. 2001) [claims of noteholders in leveraged buyout of an employee stock ownership plan not completely preempted by ERISA]; Blue Cross of Cal., 187 F.3d at 1052-53 [insurer's actions against medical providers to compel arbitration were not preempted by ERISA because the relationship was not one regulated by ERISA, such as the relationships between plan and plan member, plan and employer, and plan and trustee].

Providence Health Plan v. McDowell, 385 F.3d 1168, 1171-72 (9th Cir. 2004), cert. denied, 125 S. Ct. 1726 and 125 S. Ct. 1735 (2005) (insurer's breach of contract claim for reimbursement by insured is not preempted by ERISA and was remanded).

The Trusts' breach of contract and tort claims are premised on their purchase of the bonds, not on the existence of the ERISA plans. The ties between the claims and the plans are too tenuous to be said to "reference" the plans sufficiently to support preemption.

Turning to the relationship test, the relationship at issue, between the Plans and their insurers and brokers, is not a core relationship governed by ERISA. The purpose of ERISA was not to protect any of the parties in the relationship. I conclude that the claims do not have connections with the plans sufficient to support preemption.

The issues touch on ERISA, but not sufficiently to require their resolution in federal court. Although I sympathize with the parties being stretched between two courts, I cannot exercise jurisdiction which this court does not possess. Consequently, I remand this action to Multnomah County.

## CONCLUSION

Plaintiffs' Motion to Remand (#32) is granted. This action is remanded to Multnomah County Circuit Court. Defendant Seabury & Smith, Inc.'s Motion to Sever (#55) is moot. Hartford Fire Insurance Company's Motion to Consolidate Case No. CV05-444-KI with Case No. CV05-221-KI (#25), filed in CV05-221-KI, is denied as moot.[3]

Dated this ___6th___ day of July, 2005.

                                              ___/s/ Garr M. King___
                                              Garr M. King
                                              United States District Judge

---

[3] Although the consolidation motion is technically moot, I intend to hold a status conference soon to discuss sua sponte the consolidation of the three remaining related cases.